STATE ex rel. JOHN H. SAGNESS and Another v. HAWK CREEK TELEPHONE COMPANY.[1]

January 31, 1913.

Nos. 17,900—(10).

**Rural telephone company — extension to applicants.**

Whether respondent, a rural telephone company, incorporated "under and pursuant to the provisions of chapter fifty-eight (58) of the Revised Laws of the State of Minnesota for the year 1905," as expressed in its articles of association, but not in fact for the purpose of pecuniary profit, but solely for the mutual benefit of the members thereof, is a public service corporation, and as such under legal obligation to afford telephone facilities over its line to all applicants, quære?

**Same — refusal not arbitrary.**

Conceding it to be such a corporation, it is *held*, on the facts stated in the opinion, that its refusal to serve relators was neither arbitrary nor unreasonable.

Upon the relation of John H. Sagness and P. E. Fagerlie the district court for the county of Renville granted an alternative writ of mandamus directed to the Hawk Creek Telephone Company, requiring it to install telephone instruments and telephone service in the residences of relators or show cause why they had not done so. The matter was heard upon the relation and return by Powers, J.,

[1] Reported in 139 N. W. 711.

who made findings and ordered judgment in favor of respondent.
From an order denying a new trial, relators appealed. Affirmed.

*Daly & Barnard,* for appellants.

*J. M. Freeman,* for respondent.

BROWN, C. J.

Several farmers residing near the village of Sacred Heart, in
Renville county, associated together for the purpose of establishing
and constructing a rural telephone line leading from the village to
their homes. An incorporation was formed, "under and pursuant
to the provisions of chapter fifty-eight (58) of the Revised Laws of
the state of Minnesota for the year 1905," as expressed in the articles
of incorporation, and the organization was completed by the election
of officers to manage the affairs of the company. It was not in fact
incorporated for the purpose of pecuniary profit, but solely for the
benefit of the members forming the association and such others as
should thereafter become members, and for the single purpose of
affording them telephone communication over the line constructed.

Certain rules and regulations governing the affairs of the company
and for the admission of members were duly enacted. Among other
things, each of the original members of the association was re-
quired to pay into the treasury the sum of $50, in consideration of
which one share of stock was issued to him. The money thus
obtained was insufficient to defray the cost of constructing the line,
and an additional amount of $10 was levied upon and paid by the
members. The line was constructed as contemplated, with several
branches, and fully equipped for service. Subsequently further
regulations provided for the admission of new members, each new
applicant being required to pay to the company the sum of $60, for
which he was entitled to a share of stock and to be connected with
the company's line. For this payment the company furnished the
new members a telephone, three telephone poles, and performed
the work of connecting the wires; the member furnishing all wire
and doing the work of building the line up to the point of connect-
ing with the company line.

The only revenue received by the company to defray the expense

of keeping the line in repair is from the payments so made by the members. There are no subsequent charges for the use of the telephones or lines, except such as are imposed by the local Sacred Heart Telephone Company for switching charges; but no part thereof is for the benefit of this company.

The company constructed, with branches, what are termed in the record as "line 1," and "line 2," and by rule limited the number of subscribers upon either thereof to 15. Line 1 was, prior to the time of this controversy, occupied by that number, while line 2 has but 11 subscribers. The limitations in this respect are imposed in the interests of the service, a larger number of subscribers upon any one line having a tendency to impair the same.

Relators Fagerlie and Sagness reside in the vicinity of both lines, 1 and 2; the former being one-half mile from line 1, and $2\frac{1}{2}$ miles from line 2, while the latter resides a mile from line 1 and $1\frac{3}{4}$ miles from line 2. They joined in an application to become members of the association and for telephone connection, offering to comply with all the rules and regulations of the company. They demanded that they be connected with line 1. The company refused this connection, but offered to connect them with line 2. Claiming that they had been wrongfully refused the relief demanded, relators brought this proceeding to compel compliance therewith. The trial court found the facts, substantially as here stated, but in greater detail, denied the relief prayed for, and ordered judgment of dismissal, with costs. Relators appealed from an order denying a new trial.

A number of questions are presented and discussed in the briefs, only one of which requires consideration. It may be conceded for the purpose of the case that the defendant is a public service corporation, and as such under legal obligation to supply relators with telephone service, and that the company may be compelled by mandamus to do so. Counsel for the company earnestly contends that it is not such a corporation, that it was not organized for pecuniary profit, and hence is not a public service corporation.

We do not consider or pass upon this question; for it is clear, conceding the character of the company in that respect, that relators have not shown themselves entitled to the particular relief

demanded. They joined in a demand for connection with line 1, and refused the offer made by the company to connect them with line 2. The most relators can claim is that the company is under legal obligation to afford them facilities for telephone service equal to others similarly situated, and that they be not arbitrarily or unjustly discriminated against. 37 Cyc. 1652, and cases cited. And the sole question for consideration is whether the company, by offering to connect relators with line 2, performed its legal duty in the premises, or whether the refusal to connect with line 1 was arbitrary, unjust, or unreasonable.

We are of opinion, and so hold, that the learned trial court properly resolved the question against relators. It appears from the findings that the number of telephones now connected with line 1 are all that can receive good service therefrom, and that to attach more thereto would greatly lessen and impair the efficiency of the line. The evidence fully supports this finding. And it further appears that the sole reason for denying to relators this connection was that it would overburden the line. In view of that situation, it seems clear that the company is not open to the charge of unreasonably or arbitrarily denying to relators a service it is under any legal obligation to extend.

It also appears that three of the present subscribers upon line 1 could with a small expense be shifted to line 2, thus making room for relators. The company was under no obligation to make such a change. That was a matter resting in its judgment and discretion, having in mind the situation and relation of the parties and all facts throwing light upon the question, and it cannot be said the conclusion reached by the company was either arbitrary or unreasonable.

The cost to relators to connect with line 2 would be $70 or $80 in excess of the expense of connecting with line 1; but that fact furnishes no basis for interference by the court. The offer to connect relators with line 2, under the facts found by the court, was a full discharge of whatever legal duty the company owed relators, and they fail to show a right to the use of line 1, or an unreasonable refusal by the company to connect them therewith.

Order affirmed.